UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
K.V. and NATALIYAH VARSHAVSKIY,

                        Plaintiffs,           **MEMORANDUM & ORDER**
                                                         12-CV-1944 (MKB)
       v.

UNITED STATES OF AMERICA,

                        Defendant.
-----------------------------------------------------------------
MARGO K. BRODIE, United States District Judge:

       Plaintiffs K.V., an infant under the age of 14 years, and her mother, Nataliyah Varshavskiy, bring the above-captioned action against Defendant United States of America, pursuant to the Federal Tort Claims Act ("FTCA"), for injuries sustained by K.V. due to the allegedly negligent conditions and supervision of Floyd Bennett Field, a recreational facility located within federal property.[1] Defendant moved to dismiss the Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. For the reasons set forth below, the Defendant's motion to dismiss the Complaint is granted.

**I. Background**

      **a. Aviator Contract**

       Floyd Bennett Field ("FBF") is a part of the Gateway National Recreation Area ("Gateway"), which is a unit of the National Park System ("NPS"). (Finley Decl. ¶¶ 1–2.) On or about December 31, 2008, Defendant, through NPS, entered into a Concessions Contract (the "Contract") with Aviator Sports and Recreation, LLC acting with Aviator Development

---

[1] In the Complaint, Plaintiffs assert what appears to be a constitutional claim. (*See* Compl. ¶ 9.) At oral argument, Plaintiffs stated that they were not pursuing a constitutional claim. (*See* Oral Arg. Tr. 13:12–14:2.)

Company, LLC and Arklow-FBF, LLC (referred to collectively as "Aviator"). (Lekakis Decl. ¶ 3; Finley Decl. ¶ 12; *see generally* Lekakis Decl. Ex. A (the "Contract").) The Contract was amended on December 3, 2010, and is in effect until April 14, 2023. (Lekakis Decl. ¶ 3; Contract, Amendment No. 4 at 11.) The Contract, among other things, assigns operation and management responsibilities of certain facilities to Aviator, including the soccer field at FBF, and requires that Aviator "provide and maintain the required and authorized visitor services." (Finley Decl. ¶¶ 14–15; Contract Sec. 3(b).) Authorized visitor services include "Aviator's hosting sporting events, and/or managing sporting camps on FBF." (Finley Decl. ¶¶ 14–15.) The Contract provides that, in addition to visitor services, Aviator is "responsible for . . . facilities development and maintenance, administration," personnel, risk management and safety. (Contract, Operating Plan at Parts II(A), III, VII and XI.)

Pursuant to the Contract, Aviator is responsible for the day-to-day operations and management of the soccer field at FBF. (Finley Decl. ¶ 16; *see also* Contract, Operating Plan Parts I–IV, VII and XI.) The Contract requires Aviator to "provide all personnel necessary" to provide the required and authorized visitor services. (Contract Sec. 4(a).) As part of this responsibility, Aviator is required to "establish pre-employment screening, hiring, training, employment, termination and other policies and procedures." (*Id.*) In addition, Aviator is responsible for "the training needed to provide quality services to maintain up-to-date job skills" of its employees. (*Id.*) Aviator is also responsible for "provid[ing] a safe and healthy environment for its employees and visitors," and is therefore required to develop a risk management plan. (Contract, Operating Plan Part VII.)

Under the Contract, Defendant is responsible for conducting "appropriate inspections" to ensure that Aviator is in compliance with the terms of the Contract by evaluating Aviator's

operations approximately four times each year and conducting periodic inspections. (Contract Sec. 10(b); Contract, Operating Plan Part III(A).) NPS also has the authority to "establish and revise, as necessary, a Maintenance Plan consisting of specific maintenance requirements which shall be adhered to by [Aviator]." (Contract Sec. 10(b).) According to John Finley, the NPS business management specialist at Gateway who is responsible for reviewing contractual compliance by Aviator, "[t]hese inspections are essentially observational walk-throughs, the purpose of which is to check whether Aviator is using the FBF facilities in compliance with the terms of the Contract and to assess the general cleanliness of the FBF facilities." (Finley Decl. ¶ 33.) Otherwise, Finley does not "inspect or patrol the FBF." (*Id.* ¶ 34.) Neither Finley nor any other government employee is involved in Aviator's "day-to-day operations of the FBF facilities," including the indoor soccer field.[2] (*Id.* ¶ 36.)

The Contract requires Aviator to "address all aspects of personnel safety and protection of property" in accordance with specific contractual provisions. (Contract, Operating Plan Part

---

[2] Plaintiffs argue that Finley's sworn deposition testimony in *Svetnikova v. United States*, No. 10-CV-03457, an action filed in this district in July 2010, conflicts with Finley's deposition in this case, and that Plaintiffs should be allowed to rely on Finley's deposition from *Svetnikova* because it shows that Defendant is involved in the day-to-day management of FBF. (Pls. Opp'n 2–3, 7–11.) In *Svetnikova*, the plaintiff, who was represented by the same attorney as Plaintiffs in this case, fell in a skating rink that is part of the Aviator managed facility at FBF. (Pls. Opp'n 2–3; 7–11.) Counsel asserts that in *Svetnikova*, in describing the Defendant's duties under the very contract at issue in this case, Finley admitted that Defendant operates at a level of day-to-day management and his description of the relationship between Aviator and NPS in *Svetnikova* demonstrates that Defendant is deeply involved in ownership, maintenance, inspection and supervision of the Aviator facility. (*Id.*) Counsel made a similar argument in *Yesina v. United States*, 911 F. Supp. 2d 217, 221–22 (E.D.N.Y. 2012). In *Yesina*, the Honorable Roslynn Mauskopf found that the plaintiff's reliance upon Finley's deposition testimony in *Svetnikova* was unfounded, as "Finley's testimony does not evoke detailed, day-to-day involvement in the running of FBF," but rather it "generally states that which the Contract already makes clear: the Park Service is involved in supervising Aviator's performance of the Contract and inspects the facilities at FBF periodically." *Id.* Having reviewed Finley's deposition testimony from *Svetnikova*, the Court agrees with Judge Mauskopf. (*See generally* Pls. Ex. A.)

XI(C).) Aviator is required to "submit a written Security Plan to the Superintendent for approval" and to "update[] and review[] [the plan] on an annual basis." (*Id.* at Part XI(B).) Aviator's employees are also responsible for patrolling the facilities it operates daily, including the FBF indoor soccer field, in order to ensure the safety of visitors and "to secure government, concessioner and visitor property." (*Id.* at Part XI(C); Finely Decl. ¶¶ 16, 29.)

The Contract also requires that Aviator indemnify "[Defendant], its agents and employees from and against any liabilities, obligations, losses, damages or judgments . . . actions, suits, costs, and expenses . . . connected with or arising out of the activities of [Aviator], its employees, agents or contractors." (Contract Sec. 12(a).) Aviator is required to "maintain . . . at its sole expense, the types and amounts of insurance coverage necessary to fulfill the obligations of [the Contract]." (Contract Sec. 12(b)(1).)

### b. November 8, 2011 Incident

On November 8, 2011, K.V. participated in an organized soccer game at the indoor soccer field at FBF. (Compl. ¶ 6; Def. Mem. 2.) Plaintiffs claim that K.V. sustained injuries when she was "caused to trip and/or slip and fall due to a dangerous recreational activity." (Compl. ¶ 7.) The incident report filed after the accident states that during the soccer game, K.V. and another player "attempted to kick the same ball," causing K.V. to "stumble[] and land[] on her left forearm." (Lekakis Decl. Ex. F ("Incident Report") at 2.) Following the incident, an ice-pack was applied to K.V.'s arm and her mother was notified. (*Id.*) K.V.'s mother declined further medical treatment. (*Id.*)

### c. Plaintiffs' Administrative Claim

On or about January 19, 2012, Plaintiffs filed a claim on Standard Form 95 with the Department of the Interior pursuant to the FTCA for K.V.'s injuries sustained during the November 8, 2011 incident. (*See* Lekakis Decl. Ex. C ("SF-95") ¶¶ 6, 10.) In their

4

administrative claim, Plaintiffs state that "[t]he Plaintiff-[i]nfant was playing soccer in [the] afterschool program when she was caused to trip and fall due to Aviator Sports Recreation Center's counselors placing and stacking coats and jackets on the playing field." (SF-95.)

## II. Discussion

### a. Standard of Review

"[A] district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." *Shabaj v. Holder*, 704 F.3d 234, 237 (2d Cir. 2013) (alteration in original) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc*., 426 F.3d 635, 638 (2d Cir. 2005)). "'[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Morrison v. Nat'l Austl. Bank Ltd*., 547 F.3d 167, 170 (2d Cir. 2008) (alterations in original) (citations omitted), *aff'd*, 561 U.S. ---, 130 S. Ct. 2869 (2010). Where the plaintiff's claim implicates the FTCA, the plaintiff must "prove subject matter jurisdiction by a preponderance of the evidence." *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012); *see Yesina v. United States*, 911 F. Supp. 2d 217, 220 (E.D.N.Y. 2012); *Davis v. Goldstein*, No. 11-CV-3628, 2013 WL 3208369, at *3 (E.D.N.Y. June 24, 2013). "Because the FTCA creates a waiver of sovereign immunity, it is strictly construed and all ambiguities are resolved in favor of the United States." *Yesina*, 911 F. Supp. 2d at 220; *Davis*, 2013 WL 3208369, at *3; *see also Liranzo*, 690 F.3d at 84. A court may consider matters outside of the pleadings when determining whether subject matter jurisdiction exists. *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013); *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010); *Morrison*, 547 F.3d at 170.

### b.  Sovereign Immunity and Federal Tort Claims Act

The United States is generally immune from suit. *See United States v. Bormes*, 568 U.S. ---, ---, 133 S. Ct. 12, 16 (2012) ("Sovereign immunity shields the United States from suit absent a consent to be sued that is 'unequivocally expressed.'" (quoting *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34 (1992))). Under the FTCA, "Congress waived the United States' sovereign immunity for claims arising out of torts *committed by federal employees*" while acting within the scope of their employment. *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217–18 (2008) (emphasis added); *Kuhner v. Montauk Post Office*, No. 12-CV-2318, 2013 WL 1343653, at *2 (E.D.N.Y. Apr. 4, 2013); *Leogrande v. New York*, No. 08-CV-3088, 2013 WL 1283392, at *13 (E.D.N.Y. Mar. 29, 2013); *Espinoza v. Zenk*, No. 10-CV-427, 2013 WL 1232208, at *4 (E.D.N.Y. Mar. 27, 2013). "'Employee' under the FTCA, however, specifically excludes 'any contractor with the United States.'" *Roditis v. United States*, 122 F.3d 108, 111 (2d Cir. 1997) (quoting 28 U.S.C. § 2671); *see generally Levin v. United States*, 568 U.S ---, ---, 133 S. Ct. 1224, 1228 (2013) ("The [FTCA] gives federal district courts exclusive jurisdiction over claims against the United States for 'injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission' of federal employees acting within the scope of their employment." (quoting 28 U.S.C. § 1346(b)(1))); *Molchatsky v. United States*, 713 F.3d 159, 161–62 (2d Cir. 2013) (also quoting 28 U.S.C. § 1346(b)(1)); *Carter v. United States*, 494 F. App'x 148, 149 (2d Cir. 2012) (same). Generally, the United States is not liable for the injuries caused by the negligence of independent contractors. *See Roditis*, 122 F.3d at 111 ("Thus, as a general rule, sovereign immunity precludes suits against the United States for injuries caused by its independent contractors."); *see also McCracken v. Brookhaven Sci. Assocs. LLC*, 376 F. App'x 138, 140 (2d Cir. 2010) (citing *United States v. Orleans*, 425 U.S. 807, 813–14 (1976), for the proposition that "sovereign immunity waiver applies only to torts committed

6

by United States employees acting within the scope of employment, and not to independent contractors"); *Haskin v. United States*, No. 10-CV-5089, 2013 WL 4761110, at *4 (E.D.N.Y. Sept. 4, 2013) (explaining that the government cannot be held liable under the FTCA for negligent actions of an independent contractor); *Squicciarini v. United States*, No. 12-CV-2386, 2013 WL 620190, at *5 (S.D.N.Y. Feb. 15, 2013) ("[S]overeign immunity precludes suits against the United States for injuries caused by its independent contractors."); *Yesina*, 911 F. Supp. 2d at 220 (same); *Johnson v. United States*, No. 11-CV-1035, 2012 WL 2921542, at *2 (N.D.N.Y. July 17, 2012) ("[T]he FTCA waiver of sovereign immunity does not extend to independent contractors."); *Rosenblatt v. St. John's Episcopal Hosp.*, No. 11-CV-1106, 2012 WL 294518, at *4 (E.D.N.Y. Jan. 31, 2012) ("The FTCA defines 'employee of the Government' as 'officers or employees of any federal agency . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, . . . .' The FTCA makes clear, however, that independent contractors are excluded from this definition." (quoting 28 U.S.C. § 2671)). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Liranzo*, 690 F.3d at 84 (citations and internal quotation marks omitted). "The United States' waiver of immunity under the FTCA is to be strictly construed in favor of the government." *Id.*

### i. Aviator Was an Independent Contractor

Aviator was an independent contractor operating and managing the soccer field at FBF. Therefore, Plaintiffs' claim falls within the independent contractor exception to the FTCA's waiver of sovereign immunity and the Court lacks subject matter jurisdiction over Plaintiffs' claim. Pursuant to the contract with NPS, Aviator agreed to, among other things, handle the day-to-day operations and management of the soccer field, including any "repairs, housekeeping and groundskeeping." (Contract Sec. 10(a).) Aviator also agreed that its responsibilities include

7

"maintaining and providing a safe and healthy environment for its employees and visitors." (Contract, Operating Plan Part VII.) The Contract further provides that Aviator is responsible for hiring, training, managing and monitoring the conduct of its employees, including those who worked on or near the FBF soccer field. (Contract Sec. 4(a)–(6); Finley Decl. ¶¶ 16, 19.) In *Yesina*, the Honorable Roslynn Mauskopf analyzed the same contract at issue before this Court and determined that, based on the relationship outlined in the Contract, Aviator is an independent contractor. *See Yesina*, 911 F. Supp. 2d at 221 (finding that Aviator is an independent contractor because the government "did not control the detailed physical performance of the contractor or supervise Aviator's day-to-day operations," and therefore, where the plaintiff was injured at the FBF ice skating rink, the government could not be held liable for her injuries). In addition, the Contract provides that Aviator is responsible for purchasing general liability insurance, and is obligated to indemnify Defendant from and against any liabilities, obligations, losses, damages or judgments . . . actions, suits, costs, and expenses . . . connected with or arising out of the activities of [Aviator], its employees, agents or contractors." (Contract Sec. 12(a)–(b); *see also* Finley Decl. ¶ 17.) Courts in this Circuit have found that contractual provisions requiring the procurement of liability insurance and creating indemnification obligations are further evidence that a contracting party is indeed an independent contractor. *See, e.g.*, *Haskin*, 2013 WL 4761110, at *5 (finding that the individual who performed the work was an independent contractor because, among other reasons, he was "required to purchase employers' liability insurance and general public liability insurance"); *Fraser v. United States*, 490 F. Supp. 2d 302, 310 (E.D.N.Y. 2007) ("Courts consider the allocation of such safeguards to, and the assumption of liability by, the contractor as a general indication that the contractor was in fact independent and not acting as an agent of the Government."); *Fisko v. U.S. Gen. Servs. Admin.*, 395 F. Supp.

8

2d 57, 65–66 (S.D.N.Y. 2005) ("Finally, the Eastco Contract required Eastco to obtain and maintain liability insurance, 'a provision found by many courts to evidence that the lessee acted as an independent contractor.'" (citations omitted)).

According to Plaintiffs, K.V.'s injuries resulted from "Aviator Sports Recreation Center's counselors placing and stacking coats and jackets on the playing field." (SF-95.) Plaintiffs argue that Defendant should be held liable for K.V.'s injuries because Defendant failed to fulfill its responsibilities "with respect to the inspections, supervision, etc., within the Aviator facility." (Pl. Opp'n ECF p. 6.) Although Defendant reserved the right to conduct "appropriate inspections," approve and revise a Maintenance Plan, and approve and review a security plan, the Contract makes clear that Aviator is "solely responsible" for the maintenance, repairs and groundskeeping of FBF and its facilities, and for "all aspects of personal safety and protection of property." (Contract Sec. 10(a); Contract, Operating Plan.) The Contract also makes clear that Aviator is responsible for training and supervising its employees. (Contract Sec. 4(a).) Thus, the acts Plaintiffs complain of — failing to inspect and supervise — are responsibilities delegated to Aviator. As Judge Mauskopf held in *Yesina*, Defendant's limited supervisory role over the facility and its authority to conduct periodic inspections does not convert Aviator from an independent contractor to a government agency. *Yesina*, 911 F. Supp. 2d at 221 ("The fact that NPS conducted periodic inspections of the grounds and supervised Aviator to some extent in its carrying out of the Contract does not save [plaintiff's] complaint."); *see also Haskin*, 2013 WL 4761110, at *9 (explaining that "supervising an independent contractor . . . is insufficient to confer liability on the United States for the contractor's allegedly negligent actions"); *Wesolowska v. United States*, No. 11-CV-800, 2012 WL 3728175, at *2 (D. Conn. Jan. 3, 2012) ("General oversight by the government does not suffice to qualify a person or entity as a

9

government employee rather than an independent contractor."); *Brown v. United States*, No. 10-CV-7758, 2011 WL 1676327, at *3 (S.D.N.Y. May 3, 2011) ("General oversight and the right to inspect is not enough to hold the Government liable for the work of independent contractors."); *O'Neil v. United States*, 927 F. Supp. 599, 606–07 (E.D.N.Y. 1996) ("[N]either the retention of the right to inspect the contractor's work, nor the power to control a contractor's compliance with the contract's specifications, is sufficient to convert the contractor's status from an independent contractor to an agent of the Government for the purposes of this Act."). No provision in the Contract between NPS and Aviator provides for NPS to supervise the day-to-day operation of Aviator or to control the manner in which Aviator performed under the Contract. (*See generally* Contract.) *See Orleans*, 425 U.S. at 814 ("A critical element in distinguishing an agency from a contractor is the power of the Federal Government 'to control the detailed physical performance of the contractor.'" (quoting *Logue v. United States*, 412 U.S. 521, 528 (1973)); *Johnson*, 2012 WL 2921542, at *3 ("The relevant factors in 'distinguishing an agency from a contractor [are] the power of the Federal Government 'to control the detailed physical performance of the contractor[,]' . . . or to supervise the contractor's 'day-to-day operations.'" (quoting *Orleans*, 425 U.S. at 814–15)). Thus, pursuant to the Contract, Aviator was an independent contractor. *See Yesina*, 911 F. Supp. 2d at 221–22 (holding that the United States was not liable because it did not "control[] the detailed physical performance of the contractor or . . . the day-to-day operations of the contractor" (citations and internal quotation marks omitted)); *Brown*, 2011 WL 1676327, at *3 (finding that although the government "ha[d] the ability to inspect the work of [the contractor], and to occasionally monitor performance," the government did not have "detailed physical control" over the location); *cf. Farley v. United States*, No. 11-CV-198S, 2012 WL 713399, at *4–5 (W.D.N.Y. Mar. 5, 2012) (finding that

10

plaintiffs' FTCA claim was not barred by the independent contractor exception because the employees of the United States controlled the detailed physical performance of the contractor's work by "dictat[ing] where detainees should be held, who they should be housed with, and when they should be put in isolation").

The Court finds that Aviator is an independent contractor and that the independent contractor exception to FTCA liability precludes Plaintiffs' action. *See McCracken*, 376 F. App'x at 140 (affirming district court's dismissal of FTCA claim against the Government for lack of subject matter jurisdiction because "the alleged wrongful conduct was attributable to independent contractors").

### ii.  Discretionary Function Exception

The Court also finds that any exercise of control by Defendant over Aviator at the FBF soccer field fell within Defendant's discretionary authority and is another basis for granting Defendant's motion to dismiss the Complaint. The discretionary function exception to the FTCA allows the government to exercise its sovereign immunity when the claim is "based upon . . . the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion be abused." 28 U.S.C.A § 2680(a); *see Reichhart v. United States*, 408 F. App'x 441, 442–43 (2d Cir. 2011). Where this discretionary function exception applies, courts do not have subject matter jurisdiction to hear the claim. *See, e.g.*, *Reichhart*, 408 F. App'x at 443. Congress enacted the discretionary function exception to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Winters v. United States*, No. 10-CV-7571, 2013 WL 1627950, at *4 (S.D.N.Y. Apr. 16, 2013) (citation and internal quotation marks omitted); *see also In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d 169, 190 (2d Cir. 2008). To fall within the

11

discretionary function exception, (1) the allegedly negligent act must "involve an element of judgment or choice [that is] not compelled by statute or regulation, and (2) the judgment or choice in question must be grounded in considerations of public policy or susceptible to policy analysis." *Winters*, 2013 WL 1627950, at *5 (citing *USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia*, 681 F.3d 103, 111–12 (2d Cir. 2012)); *see also Fisko*, 395 F. Supp. 2d at 65 (quoting *United States v. Gaubert*, 499 U.S 315, 322, 328 (1991)).

Defendant's selection and supervision of Aviator falls within the discretionary function exception because "the decision to supervise Aviator and periodically inspect the premises, when the Contract delegates day-to-day management and safety to Aviator, 'was a policy decision precisely of the type the discretionary function exception is intended to protect.'"[3] *Yesina*, 911

---

[3] Plaintiffs assert that Defendant's involvement in the daily operation of Aviator requires this Court to follow *Coulthurst v. United States*, 214 F.3d at 106 (2d Cir. 2000), which held that the suit was not barred by the discretionary function exception because the complaint's allegations could be read to refer to negligence by an inspector in failing to perform a diligent inspection out of "laziness" or in being "carelessly inattentive." *Id.* at 109. However, in *Coulhurst* there was actual evidence of an inspector's negligence — the injuries occurred because the official in question allegedly took a smoke break rather than inspect the machine that caused the plaintiff's injuries, or was "absent-minded or lazy," and as a result failed to notify the appropriate authorities upon noticing the damaged cables. *Id.* at 111. Plaintiffs offer no evidence of such negligent activity on the part of Defendant in the present case. For the first time at oral argument, Plaintiffs asserted that Defendant could have been the cause of the fall by actually placing the items on the soccer field or that Defendant was negligent in their supervision not to foresee such an injury. (Oral Arg. Tr. 16:7–18:22.) Plaintiffs have offered no evidence to support their speculation that Defendant could have been the cause of the fall or that Defendant had any responsibility other than as defined in the Contract with Aviator. *See Werekoh v. Comm'r of Soc. Sec.*, No. 12-CV-6954, 2013 WL 4407063, at *3 (S.D.N.Y. Aug. 19, 2013) (explaining that, in considering a motion to dismiss for lack of subject matter jurisdiction, the court "may not rely on conclusory or hearsay statements" (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004)); *Foster v. Diop*, No. 11-CV-4731, 2013 WL 1339408, at *6 (E.D.N.Y. Mar. 31, 2013) (stating that a plaintiff must prove subject matter jurisdiction by the preponderance of the evidence in order to survive a 12(b)(1) motion to dismiss, and the court cannot rely on conclusory statements). As discussed above, the Contract specifically assigned the responsibility for "maintenance" to Aviator, and Aviator was responsible for the day-to-day

F. Supp. 2d at 222 (quoting *Moreno v. United States*, 965 F. Supp. 521, 526 (S.D.N.Y. 1997)); *see also United States v. S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S. at 819–20 ("When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind."); *Fraser*, 490 F. Supp. 2d at 311 ("The Government may neither be held liable for its selection of Cooper as the contractor, nor for the . . . general supervision of Cooper because such roles constitute a discretionary function."); *Schivcharan v. United States*, No. 04-CV-1296, 2005 WL 408046, *2 (E.D.N.Y. Feb. 15, 2005) ("[T]he United States cannot be held liable for the selection and supervision of independent contractors, because the selection and supervision of contractors is a discretionary function."). Defendant is therefore immune from suit pursuant to the discretionary function exception.

### III. Conclusion

For the foregoing reasons, the Court grants Defendant's motion to dismiss Plaintiffs' FTCA claim for lack of subject matter jurisdiction. The Clerk of Court is directed to close this case.

SO ORDERED:

    s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: September 30, 2013
      Brooklyn, New York

---

operations and management of the soccer field at FBF. (Finley Decl. ¶ 16; *see also* Contract, Operating Plan Parts I–IV, VII and XI.)

13